CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
12/16/2024
LAURA A. AUSTIN, CLERK
BY: s/C Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:24-cr-00017 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BESSY JIMENEZ-MEJIA, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Defendant Bessy Jimenez-Mejia ("Defendant") moves to revoke the United States Magistrate Judge's order of detention pending trial. (*See* ECF No. 53.) After reviewing the record of the original detention hearing, the court concludes that there are no conditions of release that will reasonably assure either the safety of the community or Defendant's appearance at future court proceedings. It will therefore deny Defendant's motion and order her detained pending trial.

## I. BACKGROUND

In August 2024, a grand jury charged Defendant with distribution of fentanyl resulting in death. (*See* Indictment [ECF No. 5].) The government moved for pretrial detention, relying on the rebuttable presumption attendant to the charged offense. (Tr. at 2:19–24 [ECF No. 53-1].)

At the detention hearing, the government proffered an overview of the crime charged and its evidence against Defendant. (*Id.* at 13:15–17:3.) Defendant did not object to the permissibility of the proffer or the material facts and evidence proffered by the government. The government also relied on the Pretrial Services Report, which outlined Defendant's extensive prior criminal record and noted her history of substance abuse. (*Id.* at 17:4–19.)

In its proffer, the government outlined Defendant's alleged role in selling counterfeit Percocet pills containing fentanyl that it alleges ultimately led to a fatal overdose death of a Northern Virginia high-school student. Specifically, the government explained that Defendant sold the fentanyl at issue to Liam Conaway, who at the time was a student at James Madison University ("JMU"). (*Id.* at 13:17–25.)Conaway, in turn, sold some of these lethal pills to Cayden Foster, the high-school student, who later ingested a portion of one of these pills and died in his bedroom.[1] (*Id.*) The government further proffered that Foster's autopsy and toxicology reports indicated that his death was directly caused by fentanyl intoxication, and that no other drugs or alcohol were discovered in his system.[2] (*Id.* at 16:10–13.) According to the government, its case-in-chief will also include "electronic evidence"—specifically, "location data and phone records[,] and sworn witness testimony connecting [Defendant] to the distribution of that resulted in the death of Cayden Foster." (*Id.* at 16:19–22.) The government also proffered that, when Defendant was interviewed by law enforcement months after Foster's death, she admitted to being a fentanyl dealer. (*Id.* at 17:1–3.)

In addition to the evidence of Defendant's involvement in the fatal fentanyl overdose, the government cited the detailed information from Defendant's Pretrial Services Report as additional grounds for detention. (*Id.* at 17:4–19.) The government correctly noted that Defendant has a lengthy prior record, having been convicted of two felonies (assault on a law

---

[1] The government charged Liam Conaway in a separate case with distribution of fentanyl without the specific allegation that this distribution resulted in Foster's death. *See United States v. Conaway*, Case No. 5:24-cr-00015 (W.D. Va. Aug. 29, 2024). Conaway later pleaded guilty to this offense; because it doesn't involve an overdose death, that charge only carries a maximum term of 20 years' imprisonment. Presumably, Conaway is cooperating with the government and will likely serve as a primary witness against Defendant at her trial.

[2] In the court's experience, this latter finding greatly simplifies the government's burden of proving the distribution at issue "resulted in death."

enforcement officer and credit card fraud), and numerous misdemeanors (*e.g.*, destruction of property, assault, driving while intoxicated ("DWI"), and driving suspended). (*Id.*) At the time of her arrest on the present charges, Defendant was serving a suspended sentence on a felony conviction, and the report documents her history of failing to appear for court or complying with court-imposed conditions. (*Id.*) Finally, the government noted that Defendant tested positive for methamphetamine and fentanyl at the time of her arrest. (*Id.* at 20:4–8.)

In support of her petition for release, Defendant cited her longstanding ties to the Harrisonburg community and the fact that she would continue to reside in the area with her mother. (*Id.* at 4:14–5:9.) Her attorney further argued that a combination of stringent bond conditions—including location monitoring, mandated employment, and drug treatment—should ameliorate the court's concerns about continued danger or risk of flight. (*Id.* at 5:10–6:1.) Finally, defense counsel argued that because the government had previously endorsed pretrial release for Liam Conaway, fundamental fairness dictated that the government—and the magistrate judge—give Defendant the same opportunity. (*Id.* at 6:9–8:2.)

At the conclusion of the evidentiary hearing, the magistrate judge concluded that no conditions or combination of conditions would reasonably assure the safety of the community or Defendant's appearance at future court proceedings and ordered her detained pending trial. (*Id.* at 26:6–28:23, 30:25–31:1.) The instant motion followed.

## II. STANDARD OF REVIEW

When a magistrate judge orders the detention of a criminal defendant, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The district court reviews the original

detention order *de novo*. *See United States v. Sprouse,* No. 3:12cr200, 2012 WL 2366455, at *2 (W.D.N.C. June 21, 2012). But the reviewing court may rely on the record from the original bond hearing and is not required to conduct a second evidentiary hearing. *See United States v. Jackson*, No. 7:19-cr-126, 2019 WL 4689144, at *1 (E.D.N.C. Sept. 25, 2019). The court has carefully reviewed the record from the October 23, 2024 detention hearing and finds that a second hearing and additional oral argument would not aid in its decision.

### III. ANALYSIS

Pretrial detention is appropriate if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community." 18 U.S.C. § 3142(e)(1). In evaluating this, the court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including her physical and mental condition and whether, at the time of the alleged offense, she was on pretrial release pending trial; and (4) the nature and seriousness of the danger that the defendant's release would present to any person. *Id.* § 3142(g). Because there is probable cause to believe, based on the grand jury's return of an indictment, that Defendant has committed a violation of 21 U.S.C. § 841(a)(1), a rebuttable presumption arises that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

"[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release

conditions." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). But this presumption only places a burden of production on a defendant; the government still carries the burden of persuasion. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (collecting cases). "A defendant satisfies his burden of production when he 'comes forward with evidence that he does not pose a danger to the community or a risk of flight.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Although a defendant's burden in this respect is not onerous, he must put forth some evidence to rebut the presumption of dangerousness. *Id.* If a defendant satisfies this burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by district court." *Mercedes*, 254 F.3d at 436.

Based on the evidence presented at the detention hearing, the court finds that the government met its burden in seeking detention on both dangerousness and risk-of-flight grounds.[3] The offense at issue—distribution of fentanyl resulting in death—is among the most serious drug charges that the court encounters. As a general matter, fentanyl, a synthetic opioid 80–100 times stronger than morphine, is highly toxic and largely responsible for the precipitous increase in fatal drug overdoses in the United States (and Virginia) over the past decade.[4] And it is specifically alleged in this case that Defendant's distribution directly caused

---

[3] That is, the government proved: (1) by clear and convincing evidence, that "no conditions other than detention will reasonably assure the safety of any other person or the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (unpublished) (citing 18 U.S.C. § 3142(f)(2)); and (2) by a preponderance of the evidence, that detention is necessary to ensure Defendant's reappearance at future court hearings. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished).

[4] *See Opioid Facts*, U.S. Dep't. of Just., https://justice.gov/opioidawareness/opioid-facts, (last updated Nov. 28, 2022).

the tragic death of a high-school student. If convicted, Defendant faces a mandatory minimum sentence of 20 years' imprisonment, and a maximum of life. *See* 21 U.S.C. § 841(b)(1)(C).

Defendant is presumed innocent of the charged offense, but for purposes of pretrial detention, the court must consider the strength of the evidence against her. *See* 18 U.S.C. § 3142(g)(2). The evidence against Defendant appears very strong. Specifically, the government has proffered that witnesses—presumably to include Liam Conaway—will testify that Defendant initially sold Conaway the counterfeit pills that Conaway, in turn, distributed to Cayden Foster. To corroborate these accounts, the government will introduce abundant "electronic evidence," including toll records and location data, that directly ties Defendant, in time and place, to Conaway and the lethal sequence of events at issue. Moreover, Defendant apparently confessed to her involvement in fentanyl trafficking. That general admission, when considered against the backdrop of the other admissible evidence related to her specific dealings with Conaway, will serve as powerful evidence of her commission of the charged offense.

Defendant's history and characteristics, including her lengthy criminal record and history of chronic substance abuse, also substantially undermine her petition for release. Defendant's history of breaking the law began when she was 18 years old and has continued, almost unabated, until her arrest on the instant charge. Her prior felony convictions for assaulting a police officer and credit card fraud are most concerning to the court, as they were to the magistrate judge initially. But Defendant's history of failing to appear for court, as reflected in four misdemeanor convictions for the same, as well as her recent non-compliance with the terms of state probation are (almost) equally concerning. Defendant, moreover, has

been convicted of at least seven additional misdemeanors, which run the gamut from assault and battery by mob and destruction of property, to numerous serious driving offenses, including DWI. In short, Defendant has a serious prior record, and it is one that evinces a marked degree of dangerousness and disrespect for the law.

Defendant makes two primary arguments in support of bond. First, she points to what she characterizes as the government's "grossly disparate treatment" of her compared to Conaway, who, as noted above, was not charged with distribution resulting in death, despite admitting to playing a more direct role in Foster's death. Defendant notes that this disparity becomes even more glaring when the court considers that the government supported Conaway's continued bond status despite the fact that he, unlike Defendant, sold fentanyl to a high school student; enlisted a JMU classmate to deliver fentanyl to the victim in Northern Virginia; apparently continued to sell drugs to his JMU classmates even after Foster's death; and lied to law enforcement and the magistrate judge about his continued drug use. (Mot. to Revoke Pretrial Detention Order at 6–8 [ECF No. 53].) The court is not persuaded.

Although this criticism might be warranted in the eyes of some, the court has no authority to police the charging decisions of the U.S. attorney—an officer of the executive branch—let alone to rectify apparent charging disparities through its bond determinations. As the government correctly notes, charging decisions rest solely within the discretion of the prosecutor.[5] Moreover, as noted by the government and the court at Defendant's initial

---

[5] In fairness to the government, there are likely valid reasons for why it elected to forego charging Conaway with distribution resulting in death, not the least of which was his likely cooperation, which culminated in the instant case against Defendant.

detention hearing, Defendant and Conaway were far from similarly situated with respect to their prior criminal histories. Conaway had no prior record, while Defendants' prior convictions, failures to appear, and probation violations comprised two full pages of her Pretrial Services Report. That distinction is stark, and it largely vitiates the argument that Defendant was subjected to disparate treatment at her bond hearing.[6]

Second, Defendant argues that her criminal history and prior failures to appear overstate her dangerousness and risk of flight. This argument fares no better than her first. Defendant attempts to minimize her felony conviction for assaulting a police officer by pointing to her inebriated state and suggesting that the officer was somehow at fault. That self-serving characterization is devoid of any factual support and contradicted by the fact of the conviction itself. And this is also not the only assault on Defendant's record. Moreover, Defendant has been convicted of numerous aggravated driving offenses, including reckless driving and DWI, and at the time of her arrest, she tested positive for methamphetamine and fentanyl. In sum, Defendant's prior record does not overstate the potential danger she poses to the community if released.

The same is true regarding risk of flight. Defendant argues that despite her multiple prior failures to appear at court proceedings and probation-violation history, the court can sufficiently ameliorate obvious concerns about flight risk with conditions such as allowing her to reside with her mother and installing location monitoring. In support, Defendant draws a

---

[6] The court would be remiss if it didn't note that Conaway recently violated the conditions of his bond through continued drug use and has been remanded to custody, where he will remain. Arguably, this proves Defendant's point that it was misguided for the government to stipulate to Conaway's release in the first instance. But one mistake doesn't justify another.

distinction between the serious charge she is facing in this case with the more minor charges Defendant faced in the past when she routinely failed to appear, and she cites a 2013 Bureau of Justice Statistics study that showed that defendants facing more serious charges "missed court less often than people with lower-level offenses." (Mot. to Revoke Pretrial Detention Order at 9.) Insofar as this study did not examine individual defendants with significant criminal records to determine if they violated their bonds when charged with serious offenses less frequently than they did when charged with more minor offenses, it is not particularly helpful. Ultimately, the court must base its decision on the presumption, Defendant's prior track record, its experience in these matters, and common sense. In combination, these guideposts lead to the ineluctable conclusion that Defendant poses an unacceptable risk of flight.

### IV. CONCLUSION

Considering the pertinent § 3142(g) factors, as summarized above, as well as the presumption attendant to serious drug-trafficking cases, the court concludes that the government has carried its burden to establish that Defendant would poses a danger to the community and risk of flight if she were released on bond. The court will therefore deny Defendant's motion and order her detained pending trial.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 16th day of December, 2024.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE